868 F.2d 458
 276 U.S.App.D.C. 129
 Unpublished Disposition
NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
dMIDWEST ENERGY, INC., Petitioner,
v.
FEDERAL ENERGY REGULATORY COMMISSION, Respondent.
 Nos. 88-1259, 88-1500.
 United States Court of Appeals, District of Columbia Circuit.
 Feb. 24, 1989.
Opinion Published in Full 870 F.2d 660.
 
 Before RUTH B. GINSBURG, SILBERMAN, and BUCKLEY, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 These cases were considered on the record from the Federal Energy Regulatory Commission and were briefed and argued by counsel for the parties. The court has reviewed the issues presented and finds they occasion no need for a published opinion. See D.C.Cir.R. 14(c). For the reasons set forth in the accompanying memorandum, it is
 
 
 2
 ORDERED and ADJUDGED that the petition for review in case No. 88-1259 be denied; it is
 
 
 3
 FURTHER ORDERED and ADJUDGED that case No. 88-1500 be dismissed.
 
 
 4
 The Clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir.R. 15. This instruction to the Clerk is without prejudice to the right of any party at any time to move for expedited issuance of the mandate for good cause shown.
 
 MEMORANDUM
 
 5
 Midwest Energy, Inc., petitions for review of a Federal Energy Regulatory Commission ("FERC" or "Commission") order construing section 104 of the Natural Gas Policy Act of 1978 ("NGPA"), 15 U.S.C. Sec. 3314 (1982). This section provides that, for natural gas "committed or dedicated to interstate commerce on November 8, 1978" for which a "just and reasonable rate under the Natural Gas Act [15 U.S.C. Sec. 717 et seq.] was in effect," id. Sec. 3314(a), the "maximum lawful price" shall be
 
 
 6
 the just and reasonable rate, per million Btu's, established by the Commission which was (or would have been) applicable to the first sale of such natural gas on April 20, 1977....
 
 
 7
 15 U.S.C. Sec. 3314(b)(1)(A)(i). FERC ruled that the section 104 ceiling price for pipeline-produced "old gas" (i.e., from wells drilled before January 1, 1973 or from leases acquired before October 7, 1969) was the national rate "established by the Commission" for independent gas producers as of April 20, 1977. See Order No. 391-B, 40 FERC p 61,174 (Aug. 10, 1987). Midwest disputes FERC's interpretation, arguing that section 104's intended base price for pipeline-produced old gas is the rate in effect in April 1977 as calculated through the application of a "cost-of-service" methodology. For the reasons discussed below, we reject Midwest's contentions and enforce FERC's order.
 
 
 8
 A brief summary of the history of this case provides the necessary analytical framework. In Public Service Comm'n v. Mid-Louisiana Gas Co., 463 U.S. 319 (1983), the Supreme Court held that Congress intended to include pipeline-produced gas in the NGPA's pricing scheme. Three years later, this court reversed FERC Rulemaking Orders No. 391, 28 FERC p 61,263 (1984), and No. 391-A, 31 FERC p 61,036 (1985) (denying petition for rehearing), on the ground that the Commission had erred in concluding that Mid-Louisiana required FERC to rule that pipeline-produced old gas prices must be based on the pre-NGPA national rates applicable to independent producers. Phillips Petroleum Co. v. FERC, 792 F.2d 1165 (D.C.Cir.1986).
 
 
 9
 In Phillips, we determined that section 104 was "ambiguous," and that under Chevron USA, Inc. v. NRDC, Inc., 467 U.S. 837, 843-45 (1984), our review was limited to determining whether the agency's interpretation represented " 'a reasonable accommodation of conflicting policies that were committed to the agency's care by the statute.' " 792 F.2d at 1169, quoting 467 U.S. at 845. Chevron deference was deemed inappropriate, however, because the Commission's decision was based not on its construction of its governing statute but on an erroneous view of the law. Id. at 1169-70, citing SEC v. Chenery Corp., 318 U.S. 80 (1943). We remanded to enable FERC to reconsider the competing interpretations of section 104 and instructed the Commission, in resolving that provision's ambiguity, to exercise its own judgment and to offer a reasonable explanation for its interpretation, rather than relying on a misreading of Mid-Louisiana. Id. at 1171-72.
 
 
 10
 On remand, FERC fully complied with our guidelines by supplying a well-reasoned explanation to support its conclusions. Emphasizing that section 104(b)(1) mandated application of the "just and reasonable rate ... established by the Commission" on April 20, 1977, FERC noted that as of that date the Federal Power Commission ("FPC") had only "established" wellhead rates for independent producers' gas at a national or area level. Instead of establishing a pipeline producer's unit rate per million Btu's of wellhead production, the FPC had simply approved a pipeline's proposed rate after evaluating the "prudence" of its overall production costs--including the cost-of-service "price" as measured by total pipeline sales. 40 FERC at 61,544.
 
 
 11
 Thus, FERC concluded that the Commission had never "established" any "just and reasonable" rate that would be "applicable" to pipeline production of old gas on April 20, 1977. FERC construed section 104's parenthetical phrase "or would have been [ ] applicable" as "intended to apply the rates established for independent producers to all pipeline-produced gas." Id. at 61,545. The Commission justified its interpretation as consistent with Congress' intent in the NGPA to put pipeline production "on the same footing as all other production." Id. at 61,545-46, citing Mid-Louisiana, 463 U.S. at 333-37.
 
 
 12
 We conclude that FERC's independent construction of section 104 is "permissible" under Chevron and that the Commission's rationale adequately supports its decision. FERC's only error, which we find non-essential to its analysis, is the assertion that Congress intended the phrase "or would have been applicable" to permit the Commission to apply national rates to pipeline producers. Here FERC relies on bootstrap construction: the clause was intended to permit application of national rates because Congress intended section 104 to have that result. This seemingly enigmatic clause is susceptible of altogether sensible interpretation. Midwest offered two explanations. First, the clause corrected two possible anomalies in NGPA pricing. See Petitioner's Brief at 25-27, citing 124 Cong.Rec.H. 13117 (Oct. 14, 1978) (Statement of Rep. Dingell) (phrase applies to two types of gas: gas from wells commenced after January 1, 1975 subject to FERC Opinion No. 770-A, and gas whose contractual price was lower than the 1977 "just and reasonable" rate). Even more persuasively, Midwest maintained that
 
 
 13
 section 104 applies to any natural gas committed or dedicated to interstate commerce on November 8, 1978. For natural gas committed to interstate commerce after April 20, 1977 and before November 8, 1978, obviously no just and reasonable rate was applicable to the sale of gas on April 20, 1977. Thus, ... the "would have been" language was included merely to ensure that natural gas produced after April 20, 1977, but before November 8, 1978 was covered by section 104.
 
 
 14
 Phillips, 792 F.2d at 1172.
 
 
 15
 This single flaw in FERC's rationale, however, does not render its opinion fatally defective. We find sufficient the Commission's justification that Mid-Louisiana confirmed Congress' intent that section 104 apply to pipeline producers. Congress, however, did not specify the means of accomplishing this goal. In light of FERC's conclusion that it had not established "just and reasonable" wellhead rates for pipeline-produced gas, it was reasonable for the Commission to apply the objective national standards that had been established for comparable gas produced by independent producers as the ceiling price under section 104.
 
 
 16
 Midwest has failed to demonstrate that FERC's construction of this NGPA provision is impermissible. Midwest concedes that section 104 does not identify the price applicable to pipeline-produced "old gas," but nonetheless insists that Congress could only have intended for FERC to employ traditional cost-of-service ratemaking in determining this price. As discussed above, however, the Commission's interpretation is equally (perhaps more) reasonable, and under Chevron we must defer to the agency.
 
 
 17
 As the Commission has provided a reasoned explanation for its construction of section 104, we deny Midwest's petition, in No. 88-1259, for review of FERC's Order No. 391-C, 42 FERC p 61,145 (Feb. 3, 1988) (denying Midwest's petition for rehearing of Order No. 391-B, 40 FERC p 61,174 (1987)). Indeed, we find this disposition so obvious, in light of Phillips, that we seriously question Midwest's judgment in pursuing its petition.
 
 
 18
 We also dismiss No. 88-1500, on two grounds. First, Midwest failed to file for a rehearing of the Commission's denial of its petition in KN Energy, Inc., 44 FERC p 61,018 (July 7, 1988), the decision being appealed in No. 88-1500. Second, our affirmance in No. 88-1259 is dispositive of the issue presented in No. 88-1500.
 
 
 19
 In sum, we deny Midwest's petition for review in No. 88-1259 and dismiss No. 88-1500.
 
 
 20
 So ordered.
 
 
 
 d
 Opinion published in part at 870 F.2d 660